IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONTEZ ARTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23 C 1593 |
| ) | |
| DAVID GOMEZ and ROB ) | |
| JEFFREYS, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Montez Artis has sued David Gomez and Rob Jeffreys for violation of the Eighth Amendment based on unsanitary prison conditions at Stateville Correctional Center and Artis's contraction of a bacterial stomach infection. Gomez and Jeffreys have moved for summary judgment.

Based on Artis's request, the Court dismisses Jeffreys from the case. The Court will accordingly only refer to Gomez throughout this opinion. The Court also limits its analysis of the claims against Gomez to February 1, 2020 through December 8, 2021 because Artis has conceded this is the relevant period. For the reasons below, the Court denies Gomez's motion for summary judgment.

### Background

Artis resided at Stateville Correctional Center from July 18, 2012 through December 8, 2021. He lived in D-house (also known as D-Unit) from February 1, 2020 through January 15, 2021. He lived in E-house and X-house from January 15, 2021

through October 13, 2021. He again lived in D-house from October 13, 2021 until he was transferred to Pontiac Correctional Center on December 8, 2021. David Gomez served as warden at Stateville from February 1, 2020 through February 19, 2022.

Artis testified during his deposition that the living conditions at Stateville were dismal during the relevant period. Specifically, he testified that he observed sewage flooding the kitchen area as well as birds and mice / rats in the kitchen and chow hall. According to Artis, the kitchen and chow hall—including the tables and chairs—were covered in feces from birds and rodents. Artis also stated that he observed bird feces on the walls, walks, floors, and cells throughout Stateville, although it was rare that birds would fly in individual cells. Artis further testified that cockroaches and other rodents would leave feces and urine in his cell, and the cockroaches would regularly crawl on his property, his bed, and his person. Artis also asserts in his complaint and response that his housing unit had mold in the showers, cold temperatures from broken windows, and the kitchen had unclean food carts. Finally, Artis asserts that the water at Stateville was brown, smelled horrible, and contained unhealthy amounts of copper and lead. Gomez has presented evidence, however, that prison officials regularly tested the water. Although a few areas in the facility exceeded normal levels of copper in the water, the kitchen and D-house did not have this issue.

Gomez has stated via an affidavit, and Artis testified, that Gomez was actively involved in monitoring the grounds at Stateville throughout his time as warden. He often performed walkthroughs of the prison. Although Gomez frequently walked the grounds, he does not recall meeting or speaking with Artis. Artis, for his part, asserts that he spoke with Gomez numerous times and informed him about the substandard living

conditions. Prison officials undertook some efforts that Gomez asserts addressed the conditions at the prison. These include employing exterminators for pest control, sanitizing various areas on a scheduled basis, and regularly testing the water.

In December 2020, Artis testified, he began experiencing stomach symptoms including vomiting, diarrhea and bloody discharge. On December 23, 2020, Artis received a stool test for Heliobacteria pylori (H. pylori), a bacterial infection. On February 5, 2021, Artis tested positive for H. pylori. He was issued medication to abate the infection. On March 20, 2021, Artis tested negative for H. pylori. Artis continued to report stomach and bowel issues through September 2021. Artis was also previously diagnosed with gastrointestinal reflux disease sometime in 2018 or 2019. He asserts that he contracted H. pylori either through a communicative effect based on the totality of the unsanitary conditions at Stateville or through the water.

Artis submitted a variety of grievances about the conditions at Stateville and his infection. The prison did not act on any of these complaints. On March 9, 2023, Artis filed this lawsuit. He filed an amended complaint—the operative complaint—on September 5, 2023. Gomez has moved for summary judgment.

## Discussion

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). A court ruling on a motion for summary judgment construes all facts and reasonable inferences the light most favorable to the nonmoving party, in this case Artis. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

### A. Procedural rules

As an initial matter, Gomez argues that Artis's response should be stricken because it was filed after the Court's December 17, 2025 deadline. As Gomez recognizes, the certificate of service represents that Artis submitted the response on December 17, 2025. Pl.'s Resp. to Defs.' R. 56.1 Stmt. at 23. His response brief is also dated December 16, 2025. Pl.'s Resp. at 15. The certificate notes that it was not scanned by his facility until December 30, 2025. Pl.'s Resp. to Defs.' R. 56.1 Stmt. at 23. The docket shows that the response to the defendants' motion and statement of facts were received via PC scan on December 30, 2025, but were not entered until January 5, 2026. Dkt. nos. 71, 72. The Court has no reason to doubt that the dates Artis included in his responses to the defendants' motion and statement of facts are incorrect. Instead, it is entirely possible—and in fact likely—that Artis provided his documents to the staff at his facility on December 17, 2025, but staff did not send them to the Clerk's office until after the Christmas holiday. This is also supported by the fact that the documents were emailed to the Clerk's office on December 30, 2025 but were not entered on the docket until after the New Year holiday. Artis is at fault for neither of these delays. The Court will not strike his response.

Gomez also argues that portions of Artis's responses to his statement of facts are procedurally deficient and improper under Local Rule 56.1. Specifically, Gomez takes issue with the language in Artis's objections to several statements of fact and points out

4

that Artis cites exhibits that were not attached to his response to the motion or to Gomez's statement of facts. The Court has the discretion, however, not to apply the rule strictly. See *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997). Because Artis is proceeding pro se and has made a genuine effort to comply with the rules in his responsive submissions, the Court will disregard his technical noncompliance. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (internal quotation marks omitted)). The Court also notes that, in addressing the motion, it relies only on factual contentions that are supported by evidence in the record.

**B.    Merits**

To withstand summary judgment on an Eighth Amendment claim based on conditions of confinement in a prison, Artis must show a factual dispute regarding whether: "(1) there is a deprivation that [was], from an objective standpoint, sufficiently serious that it result[ed] in the denial of the minimal civilized measure of life's necessities, and (2) [] prison officials [were] deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The Seventh Circuit has "identified several situations that meet this demanding test, including lack of heat, clothing, or sanitation." *Id.*

**1.    Unsanitary living conditions**

"A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an

5

excessive risk to the inmate's health and safety." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021).

Artis contends that he was forced to live in filth at Stateville. His claims are primarily based on three categories of unsanitary conditions: (1) bird, rodent and insect feces throughout the facility; (2) sewage in the kitchen; and (3) water contamination, shower mold, and vent cleanliness. Gomez does not meaningfully contest that these conditions existed. He instead argues that Artis's claims must be limited to the conditions in the D-house because that is where Artis was housed for most of the relevant period. Gomez also briefly argues that Artis has not shown a genuine factual dispute regarding whether systemic conditions existed in the kitchen because Artis did not work in the kitchen. These arguments lack merit.

Artis testified that there were "dozens of birds flying around the inside [of] the cell house" and that "[f]eces w[as] plastered everywhere on the floor, the walls, the doors, the catwalk[.]" Defs.' Ex. 1, 63: 18-22. He also testified that the birds flew overhead and sometimes defecated on him, but it was rare that the birds would fly inside the cells. *Id.* 63: 22-23, 64:1. Artis further testified that there were roaches in the cells that would leave feces on the bed, floor, property boxes, and clothes. *Id.* 64:5-7. According to Artis, mice and cockroach feces and urine were present in his cell and, in particular, in his property box. *Id.* at 64: 5-11. Artis also testified that he personally witnessed the kitchen serving lines "being inundated with sewage, spilling sewage through the serving lines." *Id.* at 15: 9-11. He personally witnessed spiders, roaches, and mice in the kitchen. *Id.* at 15:11-13. He also saw bird feces on the wall, seats and tables in the chow hall. *Id.* at 14: 18-24.

Gomez argues that Artis could not know what happened in the kitchen because he did not work there. But the Court agrees with Artis that he did not need to work in the kitchen to observe the conditions in that area. Indeed, Artis testified that he personally witnessed the conditions in the kitchen: "When you walk up to the serving line to receive the tray . . . there's no closed door to the kitchen. So you could see inside the kitchen from behind the serving line." *Id.* 16: 15-18. It is also common sense that Artis could observe the condition of the chow hall from his personal experience eating meals in that room.

The sanitation reports also support Artis's portrayal of the conditions at Stateville. Every sanitation report in the record, from February 2020 through December 2021, stated that there were "pest control issues reported" or "pest control issues ongoing" in the serving line, dish room, and kitchen area. Defs.' Ex. 8 at 77, 194, 199, 260, 314, 371, 437, 496, 502, 564; Defs.' Ex. 9 at 7, 71, 138, 418, 658, 836, 888, 972, 1044. The April 2020 report stated that, in the kitchen, the toilets and sinks needed repair, there were no soap and paper towels, and there was evidence of insects / rodents. Defs.' Ex. 8 at 199. The July 2020 and August 2020 sanitation reports stated that the "inmate toilet [was] flooded" in the kitchen. *Id.* at 371, 437. The sanitation reports also show that there were insects and rodents in Artis's cell block and no soap or paper towels at various times. *Id.* at 501, 569.

The Court concludes that a jury could reasonably infer that unsanitary living conditions at Stateville denied Artis the minimal civilized measure of life's necessities and created an excessive risk to his health.

7

### 2. Causation

Gomez next argues that Artis cannot show that his bacterial infection, H. pylori, was caused by the living conditions at Stateville. Gomez is correct that Artis must show some cognizable harm from the conditions of confinement. *Gray*, 826 F.3d at 1006. But the Seventh Circuit has expressly rejected the contention that medical evidence of direct causation is required to defeat summary judgment. *Id.* at 1007. In *Gray v. Hardy*, the court explained that a pro se plaintiff's lack of an affidavit from a medical expert did "not doom his pro se claim" at the summary judgment stage. *Id*. The plaintiff's reliance on "the common-sense link" between the conditions in the prison and his asserted ailments was sufficient. *Id.*

The Court concludes a reasonable jury could infer a similar common-sense link in this case. Artis was housed at Stateville from February 2020 through December 2021. He has presented evidence that—during that time—bird, rodent, and insect feces were present in his cell, the kitchen, and the chow hall. He also testified, based on personal knowledge, that sewage was often present in the kitchen area. Artis tested positive for H. pylori in February 2021. The Court concludes that a jury could reasonably infer a common-sense link between feces in Artis's cell where he slept, the kitchen where his food was prepared, and the chow hall where he ate his meals and his contraction of a bacterial stomach infection. A medical affidavit or other medical documentation is not necessary at this stage.

Gomez points to Judge Seeger's recent decision in *Foster v. Joliet Treatment Center*, No. 22 C 6716 (N.D. Ill. July 11, 2025). In that case, the plaintiff, Foster, failed to file any response to the motion for summary judgment, thus offering no evidence to

rebut the defendants' arguments. *Id.* at 2. Critically, Foster did not point to any evidence that he suffered an objectively serious medical condition. *Id*. The only potential evidence on this point—discussed in the defendants' motion—was testimony from Foster that his doctor told him that his skin irritation was caused by hard water and chlorine present in Stateville's water. *Id.* at 5. The court determined that this statement was hearsay and that skin irritation, without more, was not an objectively serious medical condition. *Id.*

This case is different. Artis submitted a response offering arguments and evidence in opposition to summary judgment. He also pointed to evidence that a variety of unsanitary living conditions existed at Stateville, both in the form of his testimony and prison reports. It is undisputed that Artis tested positive for H. pylori. He testified that, because of this infection, he suffered vomiting, diarrhea and bloody discharge from December 2020 through at least March 2021. It is also undisputed that Artis received treatment based on his H. pylori diagnosis. The Court thus concludes that a jury could reasonably find that an H. pylori infection is an objectively serious medical condition. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) ("A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.").

Artis asserts several other unsanitary living conditions at Stateville that—although substandard—do not permit a reasonable inference that the conditions caused his injury. First, Artis's assertion that the water conditions at Stateville contributed to his injury is not supported by the record. The water evaluation records show that the water was regularly tested and met environmental requirements. Artis points to no evidence

9

that the water contained H. pylori bacteria. Second, Artis asserts that there were broken windows, unclean vents, and cold temperatures throughout Stateville. There is no common-sense link between these conditions and his H. pylori infection. Thus the Court concludes that Artis has not shown the existence of a triable issue on these additional conditions. See *Thomas*, 2 F.4th at 721.

### 3. Deliberate indifference

As his final hurdle to withstand summary judgment, Artis must show that a genuine factual dispute exists regarding whether "prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Thomas*, 2 F.4th at 720.

Gomez argues that Artis "fails to provide any evidence of" Gomez's "direct personal knowledge of his purported injuries." Defs.' Mem. of L. at 6. But, to defeat summary judgment, Artis must show that there is a triable issue of fact on whether Gomez "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Farmer v. Brennan,* 511 U.S. 832, 837 (1994). Artis is not required to show that Gomez "acted or failed to act believing that harm actually would befall" Artis or with actual knowledge of an injury. *Id.* at 842. "Evidence that the warden must have known about *the risk of* physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference." *Gray,* 826 F.3d at 1008 (emphasis added). Thus whether Gomez had direct personal knowledge of the harm that Artis ultimately suffered is not relevant to the Court's analysis.

Gomez similarly contends that he cannot be liable under section 1983 because he was not privy to any medical records or complaints, and such complaints would be

10

referred to the healthcare unit. This argument is unpersuasive. Again, Artis is not required to show that Gomez was aware of Artis's injury. Artis must instead show that Gomez had actual knowledge that the conditions at Stateville created a serious risk of harm and responded with deliberate indifference. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (a defendant may be personally liable for the deprivation of a constitutional right if he knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye").

Gomez next argues that he was unaware of the problematic living conditions because he delegated his signatory authority on grievances to an Assistant Warden of Programs. Gomez's signature appears on each of Artis's grievances, followed by initials. According to Gomez, these are the initials of the Assistant Warden of Programs who handled the grievances at Gomez's direction. But, even without any knowledge of an inmate grievance, "a jury [can] infer that the warden was aware of" unsanitary conditions at the prison. *Gray,* 826 F.3d at 1008-09; *see also Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions" such as "inadequate hygiene").

Furthermore, Gomez concedes he was a "present warden" who regularly walked the Stateville grounds. Defs.' Mem. of L. at 11. On these walks, he would have observed the alleged unsanitary conditions throughout the prison, including in inmate cells and the kitchen. Artis also testified that he spoke to Gomez numerous times about the conditions at issue. Gomez asserts that he does not recall these conversations. This is a factual dispute for a jury to resolve. Based on this evidence, a jury could

11

reasonably infer that Gomez was aware of the unsanitary living conditions at Stateville that form the basis of Artis's claim.

Moving on from his personal knowledge of the conditions, Gomez argues that he cannot be held liable because the prison took reasonable steps to address the conditions. Artis responds that these efforts were ineffective and disputes Gomez's assertions that Stateville was regularly sanitized during COVID-19.

A comparison of *Gray v. Hardy*, *supra*, and *Thomas v. Blackard, supra,* is helpful on this point. In *Gray*, the defendant argued that the prison took reasonable steps to address the unsanitary conditions through its bird removal program and monthly exterminatory visits. *Gray*, 826 F.3d at 1009. The plaintiff asserted that, based on his personal experience, those efforts were ineffective. *Id.* The court concluded that "[k]nowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference." *Id.*

The court reached a different conclusion in *Thomas*. In that case, the plaintiff complained of unsanitary conditions in his cell and a lack of hot water. *Thomas*, 2 F.4th at 721. The record showed that prison officials promptly provided the plaintiff with a new, unsoiled mattress, several cups of disinfecting solvent to clean the walls, and gloves to remove dead flies from his bunk bed. *Id.* Prison officials also provided the plaintiff with three hot showers per week while awaiting repair of the faucet in his cell. *Id.* On that record, the court found that no reasonable jury could conclude that the officials had been deliberately indifferent to the plaintiff's cell conditions. *Id.*

The actions Gomez cites closely resemble those in *Gray.* Stateville regularly employed a pest control extermination company and had an additional sanitization

schedule during COVID-19. The frequency and process used for this sanitization schedule is unclear, but it appears that inspection reports were signed weekly. Gomez also asserts—without any support in the record—that any overflow of sewage in the inmate kitchen would have been "resolved immediately."[1] Defs.' Mem. of L. at 13. But Artis testified, based on his personal observation and experience, that these efforts were ineffective. The sanitation reports also show that the pest control issues were reported and ongoing for almost two years, at a minimum. As in *Gray*, a jury could reasonably infer deliberate indifference from Gomez "[k]nowingly persisting in an approach that [did] not make a dent in the problem[.]" *Gray,* 826 F.3d at 1009. The Court concludes these genuine factual disputes preclude summary judgment.

**C.  Qualified immunity**

Gomez asserts in the heading of his first argument that he should be dismissed based on qualified immunity. Defs.' Mem. of L. at 4. Although the heading uses the words "qualified immunity," the body of this section is an argument that Gomez was not deliberately indifferent to the conditions at Stateville. And none of the cases Gomez

---

[1] Gomez cites paragraph 10 (on page 5) of his statement of facts to support this assertion. Paragraph 10, however, states: "Plaintiff also admitted that he had never worked in the kitchen at Stateville, which was in a separate location from D House." Pl.'s Resp. to Defs.' R. 56.1 Stmt. at 5 ¶ 10. It does not provide any information about resolving an overflow of sewage in the kitchen. The only potential support in Gomez's statement of facts that the Court found for this statement was that "Stateville continued to be thoroughly sanitized daily in 2020 and 2021, including in the showers and kitchen, even while some of the facility's power washers were inoperable for some time." Pl.'s Resp. to Defs.' R. 56.1 Stmt. at 20 ¶ 34. Artis disputes this statement. *Id.* The underlying records cited by Gomez refer to the unit showers being power washed on a weekly basis, any additional unit power washing project requests being handled on a weekly basis, and an additional sanitizing / cleaning protocol schedule being conducted throughout the facility on all three shifts. These records do not show—beyond dispute—that an overflow of sewage in the kitchen would have been "resolved immediately."

13

cites in support of this argument discuss qualified immunity. The Court therefore concludes that Gomez has forfeited or waived any argument that qualified immunity applies. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments . . . are waived.") (internal quotation marks omitted); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived").

Even if Gomez had not forfeited or waived the argument, he would not be entitled to summary judgment based on qualified immunity. "Qualified immunity shields a government official from suit for damages under § 1983 when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (internal quotation marks omitted). Gomez offers no argument that the law that governs Artis's claim that Gomez was deliberately indifferent to his unsanitary living conditions is unclear, nor could he. Numerous previous decisions have addressed claims like the claim Artis asserts in this case. *See, e.g., Gray,* 826 F.3d at 1006; *Thomas*, 2 F.4th at 721; *Smith v. Godinez*, No. 14 C 6744, 2023 WL 358792 (N.D. Ill. Jan. 23, 2023). And the material facts underlying Artis's claim are genuinely disputed.

**D.     Future damages**

Finally, Gomez argues that Artis's request for future damages should be stricken because his infection has been resolved and he is no longer housed at Stateville. Artis responds that he has stated a claim for future damages because he was infected with H. pylori bacteria for life and the disease can lead to cancer. But Artis admitted that he

14

tested negative for H. pylori on March 20, 2021, and the infection was considered "eradicated." Pl.'s Resp. to Defs.' R. 56.1 Stmt. at 4 ¶ 10. Additionally, Gomez is correct that Artis is no longer housed at Stateville. Therefore, Artis is not entitled to future damages.

## Conclusion

For the reasons stated above, the Court denies Gomez's motion for summary judgment [dkt. no. 63]. Based on Artis's request, the Court dismisses Jeffreys without prejudice. The Court sets the case for a telephonic status hearing on March 23, 2026 at 8:45 a.m., using call-in number 650-479-3207, access code 2305-915-8729, to discuss the length of trial and set a trial date and also to discuss the possibility of settlement. Defense counsel is directed to make arrangements for plaintiff to participate by telephone.

Date: February 23, 2026

_____
MATTHEW F. KENNELLY
United States District Judge